# UNITED STATES DISTRICT COURT
для
Western District of Arkansas
Fort Smith Division

| | | |
|---|---|---|
| In the Matter of the Search of | ) | **FILED**<br>US DISTRICT COURT<br>WESTERN DISTRICT<br>OF ARKANSAS<br>Dec 21, 2020<br>OFFICE OF THE CLERK |
| Information associated with the cellular telephone assigned call number (501) 701-8683, IMEI #353103105842798/IMSI #311480439983047 that is stored at premises controlled by Verizon Wireless | ) Case No. 2:20-cm-98 ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

      X    evidence of a crime;

      ☐    contraband, fruits of crime, or other items illegally possessed;

      ☐    property designed for use, intended for use, or used in committing a crime;

      ☐    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. § 2423(a), transportation in interstate commerce of a minor with intent to engage in criminal sexual activity for which any person can be changed with a criminal offense, namely, Arkansas Code Annotated 5-14-103(a)(3)(A), Rape.

The application is based on these facts: **See Affidavit of FBI Special Agent Robert Allen**

    X Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Allen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 21, 2020

*Judge's signature*

City and state: Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Robert Allen, your Affiant, am a Special Agent for the Federal Bureau of Investigation (FBI), being duly sworn, state the following is true and correct based upon my personal knowledge, investigation, and belief:

### INTRODUCTION AND AGENT BACKGROUND

1. Affiant makes this Affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(501) 701-8683**, IMEI #353103105842798, and IMSI #311480439983047 ("the SUBJECT PHONE"), that is stored at premises controlled by **Verizon Wireless**, a wireless telephone service provider headquartered at **Verizon Wireless, Corporate Headquarters, 1095 Avenue of the Americas, New York, NY 10036**. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **Verizon Wireless** to disclose to the Government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Affiant is a Special Agent currently assigned to the Fort Smith Resident Agency of the Little Rock Division of the FBI. Affiant has been employed as a Special Agent with the FBI for over thirteen years. During Affiant's employment with the FBI, Affiant has received training concerning and has participated in the investigation of federal criminal offenses enumerated in Title 18 of the United States Code, specifically, criminal statutes involving the sexual exploitation of minors. Prior to Affiant's employment with the FBI, Affiant was

employed as a Certified Police Officer by the Van Buren, Arkansas, Police Department for ten years. During Affiant's employment as a Van Buren Police Officer, Affiant received training and was involved in investigating criminal offenses. As part of Affiant's duties, Affiant is assigned to the River Valley Child Exploitation Task Force operating out of the FBI Resident Agency (RA) in Fort Smith, Arkansas. Your Affiant investigates violations of interstate transportation of minors with intent to engage in criminal sexual activity; specifically, violations of Title 18, U.S.C. § 2423(a). Your Affiant has received training in the area of numerous federal violations against minor victims to include the sexual exploitation and trafficking of minor children through the Internet and child pornography and child exploitation offenses. Your Affiant has participated in the execution of numerous search warrants and arrest warrants, several of which involved Internet crimes against persons, sex trafficking of minors, interstate transportation of minors with intent to engage in criminal sexual activity, and child exploitation and/or child pornography offenses. Affiant is aware from experience and training that information obtained from cell-site location data can provide evidence of travel and transportation in interstate commerce because cell-site location data can document the movement of a user's cellular telephone.

3. The facts in this Affidavit come from Affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of Affiant's knowledge about this matter.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that a violation of Title 18, U.S.C. § 2423(a) was committed by Jeffrey Callen Gonzagowski, Jr. (GONZAGOWSKI) by transporting a minor, identified in this Affidavit as JANE DOE, in interstate commerce from the Western District of Arkansas to Oklahoma in or about September

2014, with intent to engage in sexual activity for which any person can be charged with a criminal offense, namely, Arkansas Code Annotated 5-14-103(a)(3)(A), rape, a Class Y felony. There is probable cause to search the records and information associated with the cellular telephone assigned call number **(501) 701-8683**, IMEI #353103105842798, and IMSI #311480439983047, for the time period of September 1, 2014 through and including October 1, 2014, as described in Attachment A, for evidence of this crime, as further described in Attachment B.

## PROBABLE CAUSE

5. On December 9, 2020, this Court authorized a Criminal Complaint based upon an Affidavit sworn to by Affiant in case captioned, *United States of America v. Jeffrey Callen Gonzagowski,* case number 2:20-mj-2016-001, Western District of Arkansas, Fort Smith Division. Affiant now applies for a search warrant for information associated with cell-site location data for cellular telephone assigned call number **(501) 701-8683** in connection with Affiant's continuing investigation into GONZAGOWSKI's violation of 18 U.S.C. § 2423(a), as alleged in the Criminal Complaint in case number 2:20-mj-2016-001.

6. Affiant has probable cause to believe that information associated with cellular telephone assigned call number **(501) 701-8683** will identify locations during September 2014 when JANE DOE, a minor, was transported in interstate commerce by GONZAGOWSKI from the Western District of Arkansas to Spiro, Oklahoma, with intent to engage in sexual activity for which any person can be charged with a criminal offense, namely, Arkansas Code Annotated 5-14-103(a)(3)(A), rape, a Class Y felony, all in violation of Title 18, U.S.C. § 2423(a).

7. Affiant has learned that JANE DOE used cellular telephone assigned call number **(501) 701-8683** in September 2014 and that JANE DOE had in her possession cellular telephone

assigned call number **(501) 701-8683** when she was transported in September 2014 by GONZAGOWSKI from Mount Ida, Arkansas, in the Western District of Arkansas, to Spiro, Oklahoma.

8. Affiant has probable cause to believe that after transporting JANE DOE across the state line from Arkansas to Spiro, Oklahoma, in September 2014, and while at a residence in Spiro, Oklahoma, GONZAGOWSKI touched the vaginal area of JANE DOE, an act that would constitute a violation of Arkansas Code Annotated 5-14-103(a)(3)(A), rape, a Class Y felony, because JANE DOE was then under the age of 14.

9. Affiant has probable cause to believe that this conduct occurred based upon Affiant's review of two forensic interviews of JANE DOE, as well as GONZAGOWSKI's statement to Affiant on December 10, 2020, as set forth in paragraph 12 of this Affidavit. Affiant has reviewed forensic interviews conducted of JANE DOE on September 4, 2020, and on October 29, 2020, at the Cooper-Anthony Mercy Child Advocacy Center in Hot Springs, Arkansas. JANE DOE disclosed during the forensic interviews that GONZAGOWSKI, her previous stepfather, started touching her inappropriately when was around age six. JANE DOE described GONZAGOWSKI first touched her vagina both on the outside and inside with his fingers. JANE DOE stated that later in time, GONZAGOWSKI put his penis into her private area (referring to her vagina). JANE DOE stated that the abuse continued until she turned twelve years old, when GONZAGOWSKI no longer had access to her.

10. JANE DOE described an event in which GONZAGOWSKI transported her (along with other siblings) to Oklahoma for a weekend and that while she was in Oklahoma, GONZAGOWSKI touched JANE DOE with his fingers on the outside and inside of her vagina. Based upon Affiant's knowledge of JANE DOE's date of birth, JANE DOE was under the age of

4

14 years in September 2014. Affiant also knows that JANE DOE possessed an iPhone, with cellular telephone call number **(501) 701-8683**, when she was transported to Oklahoma from Arkansas in September 2014 by GONZAGOWSKI and back to Arkansas.

11. Affiant arrested GONZAGOWSKI pursuant to an arrest warrant authorized by the Criminal Complaint in case number 2:20-mj-2016-001 on December 10, 2020.

12. After taking GONZAGOWSKI into custody and giving him a *Miranda* advisement, GONZAGOWSKI made an audio and video-recorded statement to Affiant. GONZAGOWSKI admitted in the audio and video-recorded statement on December 10, 2020, that he touched JANE DOE on her vagina for several years. He detailed the sexual abuse on JANE DOE, explaining when it started and what happened, to include sexual abuse at multiple hotels in Hot Springs. GONZAGOWSKI admitted to touching JANE DOE on her vagina on the trip to Oklahoma. GONZAGOWSKI initially denied any penetration with his fingers when he would touch JANE DOE, then later in the interview, he admitted that his fingers would go inside her vagina just a little bit. GONZAGOWSKI denied ever penetrating JANE DOE's vagina with his penis. Later in the interview, GONZAGOWSKI stated that he would just rub his penis up against JANE DOE's vagina, but would not penetrate her vagina. GONZAGOWSKI admitted to taking a picture of JANE DOE's vagina with a cell phone.

13. Based upon GONZAGOWSKI's statement that he touched JANE DOE's vagina when JANE DOE was in Oklahoma, Affiant has probable cause to believe that GONZAGOWSKI did in fact violate Title 18, U.S.C. § 2423(a) by transporting JANE DOE in interstate commerce from Mount Ida, Arkansas, in the Western District of Arkansas, to Oklahoma, in or about September 2014, with intent to engage in sexual activity for which any person can be charged with a criminal offense, namely, Arkansas Code Annotated 5-14-

103(a)(3)(A), rape. Affiant has probable cause to believe that **Verizon Wireless** in fact has information stored at premises controlled by **Verizon Wireless** that is evidence that the interstate transportation of JANE DOE by GONZAGOWSKI occurred in or about September 2014.

14. Affiant requests this warrant to obtain cell-site location data from JANE DOE's cellular telephone assigned call number **(501) 701-8683**. Affiant has probable cause to believe that cell-site location data exists to show that JANE DOE was transported in interstate commerce in September 2014, starting from a location in or around Hot Springs, Arkansas, in the Western District of Arkansas, across the state border, and into Oklahoma. Affiant has probable cause to believe that cell-site location data will show that JANE DOE's cellular telephone assigned call number **(501) 701-8683** was located in or near Spiro, Oklahoma, for a period of time in September 2014, and cell-site location data will demonstrate movement of JANE DOE's cell phone in interstate commerce from Oklahoma into the Western District of Arkansas, to the Hot Springs area in or about September 2014. Affiant has probable cause to believe that **Verizon Wireless** has information stored at the premises controlled by **Verizon Wireless** of cell-site location data pertaining to cellular telephone assigned call number **(501) 701-8683** for the period of September 1, 2014, through and including October 1, 2014.

15. Affiant has learned from JANE DOE's mother that the carrier for cellular telephone assigned call number **(501) 701-8683** in September and October 2014 was **Verizon Wireless**. Affiant has reviewed information obtained from legal process served on **Verizon Wireless** that the subscriber for cellular telephone assigned call number **(501) 701-8683** was in fact JANE DOE's mother and that the service provider/carrier was in fact **Verizon Wireless.**

16. Affiant has learned through training and experience that **Verizon Wireless** is a company that provides cellular telephone access to the general public. Affiant knows through training and experience that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17. Based on Affiant's training and experience, Affiant knows that **Verizon Wireless** can collect cell-site data about the SUBJECT PHONE. Affiant also knows that wireless providers such as **Verizon Wireless** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Based on Affiant's training and experience, Affiant knows that **Verizon Wireless** also collects per-call measurement data, which **Verizon Wireless** also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower.

7

This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

19. On October 29, 2020, JANE DOE'S mother contacted her service provider, **Verizon Wireless**. Affiant was informed by JANE DOE's mother that **Verizon Wireless** told JANE DOE's mother that there be location data available for the time period requested upon legal service of a search warrant or subpoena.

20. Based on Affiant's training and experience, Affiant knows that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the methods of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. Affiant also knows that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In Affiant's training and experience, Affiant has probable cause to believe that evidence of violation of Title 18, U.S.C. § 2423(a), can be obtained that will assist in the identification of callers to the SUBJECT PHONE.

## AUTHORIZATION REQUEST

21. Based on the foregoing, Affiant request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. Affiant further requests that the Court direct **Verizon Wireless** to disclose to the Government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **Verizon Wireless**, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

_____
Robert F. Allen, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this  21st  day of December, 2020.

_____
Honorable Mark E. Ford
United Stated Magistrate Judge

## ATTACHMENT A
**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(501) 701-8683**, IMEI #353103105842798, and IMSI #311480439983047("the Account"), that are stored at premises controlled by **Verizon Wireless** ("the Provider"), headquartered at **Verizon Wireless, Corporate Headquarters, 1095 Avenue of the Americas, New York, NY 10036**.

## ATTACHMENT B
### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government **any and all location data**, as well as the following information pertaining to the Account listed in Attachment A for the time period **September 1, 2014 to October 1, 2014**:

- A. The following information about the customers or subscribers of the Account:
- i. Names (including subscriber names, user names, and screen names);
- ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses); same question as above;
- iii. Local and long distance telephone connection records;
- iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
- v. Length of service (including start date) and types of service utilized; same question as above;
- vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services

11

    Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

B. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. Information regarding the cell towers and sectors through which the communications were sent and received.

**II.** **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of a violation of Title 18, U.S.C. §2423(a) involving **Jeffrey Callen GONZAGOWSKI, Jr.** during the period **September 1, 2014 to October 1, 2014.**

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **[PROVIDER]**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **[PROVIDER]**. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **[PROVIDER]**, and they were made by **[PROVIDER]** as a regular practice; and

b. such records were generated by **[PROVIDER'S]** electronic process or system that produces an accurate result, to wit:

1. The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **[PROVIDER]** in a manner to ensure that they are true duplicates of the original records; and

2. The process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date                         Signature